United States District Court
Southern District of Texas
ENTERED

MAY 12 2006

Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **AMERICAN REGISTRY OF RADIOLOGIC TECHNOLOGISTS,** | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. B-05-287 |
| **MANUEL O. GARZA,** | § § § | |
| Defendant. | § § | |

## OPINION & ORDER

BE IT REMEMBERED that on May 12, 2006, the Court considered Plaintiff American Registry of Radiologic Technologists' Motion for Entry of Default Judgment. Dkt. No. 12.

### I.  Background

*A. Factual*

This case arises out of a dispute between the American Registry of Radiologic Technologists ("ARRT" or "Plaintiff") and Manuel O. Garza ("Defendant"). Dkt. No. 1. ARRT is an organization which evaluates radiologic technologists to determine their credentials. *Id.* at 2. ARRT operates by evaluating persons who apply for registration with the organization, certifying that individual persons have met certain requirements imposed by the organization, granting registration status to individuals who abide by the continuing requirements of the organization,[1] and maintaining a registry of all qualified

---

[1]Registration with ARRT is not equivalent to certification. Dkt. No. 1, at 4. A person can become certified by the organization by meeting an initial set of requirements. *Id.* To be registered, a person must first be certified, and then must also meet additional requirements, such as taking continuing education courses and

radiologic technologists. *Id.* at 2–4; *see also* Sovereign Order of St. John of Jerusalem, Inc. v. Grady, 119 F.3d 1236, 1239 (6th Cir. 1997). Defendant is a radiologic technologist. Dkt. No. 1, at 4.

"ARRT is the largest organization of radiologic technologists in the country." *Id.* at 2. It is also the sole registrar for individuals qualified in radiography. *Id.* For these reasons, many health care facilities require their radiologic technologists to be ARRT certified. *Id.* at 4. In addition, Medicare and Medicaid require hospitals to have at least one ARRT certified technician on duty at all times. *Id.*

ARRT adopted its trademark in 1962. *Id.* at 2. The mark, which is a collective membership mark, has been in continuous use since that time. *Id.* at 2–3, 4; Dkt. No. 1, Ex. A. The mark was registered on the Principal Register of the United States Patent and Trademark Office in 1980. Dkt. No. 1, at 3; Dkt. No. 1, Ex. A. ARRT has spent substantial time, money, and effort developing the goodwill of its mark. Dkt. No. 1, at 3. Because of this, Plaintiff's mark is recognized by the public and relied on "as the definitive listing of those individuals qualified to work as radiologic technologists and, in particular, in radiology." *Id.* at 4. Thus, Plaintiff's mark qualifies as a famous mark. *Id.*

Plaintiff certified Defendant as a radiologic technologist in 1996. *Id.* In 2003, ARRT's Ethics Committee sent Defendant a letter stating that it was recommending a revocation of his certification. *Id.* at 5; Dkt. No. 1, Ex. B. Based on information considered by the Committee, it decided to cancel Defendant's scores from his test in 1996. Dkt. No. 1, at 5. The letter dated February 12, 2003 informed Defendant that once the decision became final, his credential card and/or certificate would become invalid, that he would no longer hold ARRT certification, and that his credential card must be returned within 30 days. *Id.*; Dkt. No. 1, Ex. B. Furthermore, Defendant was informed that the decision would become final if he did not request a hearing and pay the associated fee within 30 days of when the letter was mailed. Dkt. No. 1, at 5; Dkt. No. 1, Ex. B. The evidence indicates that this letter was not sent via certified mail. Because Defendant did not respond to the letter, the revocation became final in March

---

meeting ethical requirements. *Id.* Registration must be renewed annually. *Id.*

2003. Dkt. No. 1, at 5.

On June 10, 2003, a company in Washington State requested confirmation from ARRT that Defendant was certified. *Id.* at 6; Dkt. No. 1, Ex. C. Thus, Plaintiff learned that Defendant had presented his certification card, which indicated that it was valid through September of 2003, to a potential employer. Dkt. No. 1, at 6; Dkt. No. 1, Ex. C. ARRT notified the company that Defendant was not certified. Dkt. No. 1, at 6; Dkt. No. 1, Ex. D.

Three days later, Plaintiff "sent a 'cease and desist' letter to Defendant." Dkt. No. 1, at 6; Dkt. No. 1, Ex. E. This letter was sent via certified mail, return receipt requested. Dkt. No. 1, Exs. G, H. Defendant responded to this letter on June 27, 2003 by telephone, stating that he was unaware of the revocation of his certification. Dkt. No. 1, at 7. During this phone conversation, Defendant told ARRT that he never received the Ethics Committee's letter, because his mother, who suffers from Alzheimer's disease, had thrown it away. *Id.* After the telephone conversation, but still on June 27, 2003, another copy of the Committee's letter was sent to Defendant. *Id.*; Dkt. No. 1, Exs. E, H.

On August 16, 2004, a health center in Brownsville, Texas called Plaintiff to request verification of Defendant's registration status. Dkt. No. 1, at 8. ARRT was informed that Defendant represented to the health center that he was not currently registered, but he also produced his credential card, altered by blacking out his continuing education compliance and identification number, to the health center in an effort to show "that he had previously been certified." *Id.*; Dkt. No. 1, Ex. K. Plaintiff notified the health center that Defendant was not registered or certified and that his credential card was not valid. Dkt No. 1, at 8; Dkt. No. 1, Ex. L.

Finally, Plaintiff informed Defendant, via letter posted April 7, 2005, that it planned to pursue legal action against him. Dkt. No. 1, at 9; Dkt. No. 1, Ex. N. ARRT made an offer of settlement to Defendant, but told him that after May 7, 2005 it would file a complaint in federal court. Dkt. No. 1, Ex. N. The letter and accompanying settlement offer were also sent via certified mail, return receipt requested. Dkt. No. 1, Ex. O. Defendant did not respond. Dkt. No. 1, at 9.

### B. Procedural

ARRT first filed its complaint against Defendant on November 8, 2005. *Id.* Defendant was served with process on November 22, 2005. Dkt. No. 9. Defendant never answered or otherwise appeared in this action.

ARRT therefore moved for entry of default against Defendant on January 24, 2006. Dkt. No. 10. Pursuant to Federal Rule of Civil Procedure 55(a), the Court Clerk entered default against Defendant on January 27, 2006. Dkt. No. 11. The current motion, filed March 15, 2006, is Plaintiff's request for entry of default judgment. Dkt. No. 12.

## II. Standard for Entry of Default Judgment

Default judgment is generally disfavored because it operates as an adjudication of a case without considering the merits of the case. *See* Kingvision Pay-Per-View Ltd. v. Wise, No. Civ. A. 05-4140 DMC, 2006 WL 91300, *1 (D.N.J. Jan. 13, 2006); DirecTV, Inc. v. Agee, 405 F.Supp.2d 6, 9 (D.D.C. 2005). Courts therefore exercise considerable judicial discretion when considering motions for default judgment. *See, e.g., Wise,* 2006 WL 91300, at *1. However, once a defendant is determined to be in default, a court will accept all factual allegations contained in the plaintiff's complaint, except those pertaining to the amount of damages, as true. *See Agee,* 405 F.Supp.2d at 9; Pack v. United States, No. CV-F-92-5327 REC, 1996 WL 149345, *2 (E.D. Cal. Feb. 1, 1996); Degen v. Bunce, Civ. A. No. 93-5674, 1995 WL 120483, *2 (E.D. Pa. Mar. 13, 1995). In addition, although it operates as an admission of the facts alleged by the plaintiff, "a default does not constitute an admission of conclusions of law or of liability." *See Degen,* 1995 WL 120483, at *2. Thus, even after a defendant has defaulted, a plaintiff is still not entitled to default judgment as a matter of right. *See Wise,* 2006 WL 91300, at *1. Instead, the court retains discretion to consider whether the plaintiff has adequately alleged a legitimate cause of action. *See Degen,* 1995 WL 120483, at *2 (quoting 10 WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 (2d ed. 1987)). Furthermore, if it finds that default judgment is appropriate, the court "has

considerable latitude in determining the amount of damages." *See Agee*, 405 F.Supp.2d at 9.

## III. Analysis

Plaintiff asserts various forms of three main causes of action against Defendant: trademark infringement, dilution, and unfair competition. *See* Dkt. No. 1, at 9–13; Dkt. No. 12, at 2. Based on these claims, Plaintiff requests that the Court (1) issue an injunction preventing Defendant from engaging in any further use of its trademark, (2) order Defendant to turn over any materials displaying Plaintiff's trademark, and (3) award costs and attorney's fees to Plaintiff. Dkt. No. 12, at 3–4. The Court will therefore consider whether Plaintiff has adequately alleged any and/or all of these causes of action and, if so, the Court will determine what award is appropriate based on Defendant's conduct.

### A. *The Causes of Action*

Plaintiff brought six counts against the Defendant in this case: three counts of trademark infringement, one count of dilution, and two counts of unfair competition. Dkt. No. 1, at 9–13. Two of these claims, one each of trademark infringement and unfair competition, are alleged to have violated the Plaintiff's rights under the common law. *Id.* at 11, 13. These common law claims "present no issues different from those covered" by the federal claims and therefore will not be treated separately. *See* Waples-Platter Cos. v. Gen. Foods Corp., 439 F.Supp. 551, 583–84 (N.D. Tex. 1977); Zapata Corp. v. Zapata Trading Int'l, Inc., 841 S.W.2d 45, 47 (Tex. App. 1992). Thus, each distinct cause of action will be addressed below.

#### i. Trademark Infringement — Reproduction, Counterfeit, Copy, or Imitation

In its first count, Plaintiff avers that Defendant infringed its trademark by using "in commerce a reproduction, counterfeit, copy, or colorable imitation of ARRT's Mark." Dkt. No. 1, at 9; 15 U.S.C. § 1114(1)(a) (2005). Plaintiff argues that Defendant infringed its trademark by continuing to use his credential card after it was revoked.

Dkt. No. 1, at 9. The Court disagrees.

Generally, "trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent." John Paul Mitchell Sys. v. Randalls Food Mkts., Inc., 17 S.W.3d 721, 735 (Tex. App. 2000) (quoting Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., 988 F.2d 587, 590 (5th Cir. 1993)). Furthermore, "the mere fact that the sale is unauthorized — that is, without consent — does not give rise to an infringement claim when the marked goods are genuine." Id. (quoting John Paul Mitchell Sys. v. Pete-N-Larry's, Inc., 862 F.Supp. 1020, 1023 (W.D.N.Y. 1994)). In this case, Defendant was not offering goods, but instead was attempting to sell his services. Dkt. No. 1, at 6–9. In an effort to gain employment, he used the card which had been issued to him by Plaintiff. Id. The card was not "a reproduction, counterfeit, copy or colorable imitation." Id. at 4–5; 15 U.S.C. §§ 1114(1)(a), 1116(d)(1)(B) (2005). It was an original card created by Plaintiff. Dkt. No. 1, at 4–5. Defendant's use of the card once his certification had been revoked was unauthorized. Id. at 4–9. However, his unauthorized use of the card does not transform it into a counterfeit card. See 15 U.S.C. §§ 1114(1)(a), 1116(d)(1)(B) (2005). The card remained genuine, even if Defendant had no right to possess it. Id. Thus, Plaintiff's first cause of action fails as a matter of law.

### ii. Trademark Infringement — False Designation of Origin, Sponsorship, or Approval

Plaintiff's second cause of action also alleges trademark infringement, in that Defendant's use of the credential card amounted to "a false designation of origin, sponsorship, or approval." Dkt. No. 1, at 10; 15 U.S.C. § 1125(a)(1)(A) (2005). Plaintiff alleges that Defendant's use of the credential card "misrepresents the nature, characteristics, and/or qualities of Defendant Garza's commercial activities." Dkt. No. 1, at 10.

> Plaintiff's claim arises under 15 U.S.C. § 1125(a)(1). That statute provides:
> Any person who, on or in connection with goods or services, . . . uses in commerce any word, term, name, symbol, or device, . . . or any false

> designation of origin, false or misleading description of fact, or false or misleading representation of fact, which— (A) is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The Court finds that Plaintiff has successfully established that Defendant violated this statute. Defendant used his credential card, which contained ARRT's mark, in connection with the sale of his services. Dkt. No. 1, at 6–9. Plaintiff points to two specific occasions, after Defendant's certification had been revoked, in which Defendant used the card. *Id.* On one of these occasions, Defendant used the card in its original form and without any accompanying explanation or statement regarding the validity of the card. *Id.* at 6. On the second occasion, Defendant had altered the card and stated that his certification was not current. *Id.* at 8. The Court finds that both of these uses of the card violate this statute.

Defendant's first use of the card after his certification was revoked constituted both the use of a word, term, name, symbol, or device — ARRT's mark — and engaging in a false representation of fact.[2] *Id.* at 6. His use of the card was also likely to cause a mistake, by creating the impression that Defendant was certified and registered by ARRT, when, in fact, he was not. *See* Dkt. No. 1, at 6; 15 U.S.C. § 1125(a)(1)(A) (2005). Furthermore, by using the card, Defendant was likely to deceive potential employers, because possession and presentation of the card implies that Defendant was associated with ARRT and that ARRT approved of his work. Dkt. No. 1, at 6. Neither of these implications were true. *Id.* at 5. Thus, Defendant's first post-revocation use of the card was a clear violation of this statute.[3]

---

[2] By using the card in conjunction with his application for employment, Defendant represented that he was certified and registered by ARRT — a false representation of fact. Dkt. No. 1, at 4, 6; 15 U.S.C. § 1125(a)(1)(A) (2005).

[3] Defendant's claim that he lacked knowledge of the revocation is irrelevant. The statute includes no element of mens rea in order to hold the Defendant liable for

Defendant's second use of the card also violated the statute. Although Defendant blacked out portions of the card and explained that he was not currently registered with ARRT, use of the card still constituted use of ARRT's mark and a misleading representation of fact. Dkt. No. 1, at 8; 15 U.S.C. § 1125(a)(1)(A) (2005). Simple possession of the card implied that Defendant was affiliated with ARRT, because ARRT had not re-claimed the card from Defendant. Dkt. No. 1, at 5. An employer would have no reason to know that Defendant's certification itself had been revoked, and that Defendant had no right to the continued possession of the card. *Id.* Defendant's statement that he was not affiliated with ARRT is insufficient to alter this conclusion, because the statement failed to specify *why* he was no longer affiliated with ARRT and was not sufficiently explicit about his relationship with ARRT. *Id.* at 8. Thus, this use of the card also violated the statute.

### iii. Dilution

Plaintiff's fourth count alleges that Defendant diluted Plaintiff's mark by continuing to use it after his certification was revoked. Dkt. No. 1, at 11–12; 15 U.S.C. § 1125(c) (2005). To establish a claim of dilution, the Plaintiff must establish six elements:

> (1) the plaintiff is the owner of a mark which qualifies as a "famous" mark; (2) the defendant is making commercial use; (3) in interstate commerce; (4) of a mark or trade name; (5) defendant's use began after the plaintiff's mark became famous; and (6) defendant's use causes dilution by lessening the capacity of plaintiff's mark to identify and distinguish goods or services.

Nike Inc. v. Variety Wholesalers, Inc., 274 F.Supp.2d 1352, 1372 (S.D. Ga. 2003) (citations omitted). Dilution can be shown by either of two theories: "blurring" or "tarnishment." *See* Pebble Beach Co. v. Tour 18 I, Ltd., 942 F.Supp. 1513, 1564–67 (S.D. Tex. 1996). "A showing of actual dilution, rather than a likelihood of dilution, is required." *Nike*, 274 F.Supp.2d at 1372 (citing Moseley v. V Secret Catalogue, Inc.,

---

violating it. *See* 15 U.S.C. § 1125(a)(1)(A) (2005).

537 U.S. 418, 432-33 (2003)).

In this case, Plaintiff clearly established the first five elements of dilution. Dkt. No. 1, at 2–9. The claim fails to establish the final element, however.

First, Defendant's use of the mark does not "blur" Plaintiff's mark. Plaintiff's service is to sponsor or approve of radiologic technologists. *Id.* at 2. Defendant's services, on the other hand, are those of a radiologic technologist. *Id.* at 4. When he presented his card to potential employers after its revocation, Defendant was using Plaintiff's trademark *in conjunction with* his services, not *to identify* his services. *Id.* at 6–9; *see also* Ringling Bros.-Barnum & Bailed Combined Shows, Inc. v. Utah Div. of Travel Dev., 955 F. Supp. 605, 616 (E.D. Va. 1997); Panavision Int'l, L.P. v. Toeppen, 945 F. Supp. 1296, 1304 (C.D. Cal. 1996). Defendant was claiming that Plaintiff's service applied to his own services, *i.e.*, that Plaintiff approved of his services. Dkt. No. 1, at 6–9. Therefore, Defendant did not associate Plaintiff's mark with unrelated goods or services. *Id.*; *Tour 18*, 942 F.Supp. at 1567. At most, he falsely represented that Plaintiff sponsored or approved of his services — an issue which was addressed *supra* § III.A.ii. Thus, Defendant did not "blur" Plaintiff's mark.

Second, Defendant's use of the mark does not "tarnish" Plaintiff's mark. Defendant used the mark in an effort to sell his services as a radiologic technologist. *Id.* at 6–9. Plaintiff made no allegations that Defendant linked Plaintiff's mark to poor quality services or placed the mark in an unsavory or unwholesome context. *Id.*; *Tour 18*, 942 F.Supp. at 1565. Thus, Defendant did not "tarnish" Plaintiff's mark.

Finally, Plaintiff clearly fails to establish *actual*, as opposed to *a likelihood of* dilution. Dkt. No. 1, at 6–9. For both of the incidents alleged by Plaintiff, the employers called Plaintiff to verify the information provided by Defendant. *Id.* Plaintiff therefore had the opportunity to set the record straight in both instances. Thus, there is no evidence that any dilution actually occurred. Plaintiff's claim of dilution fails as a matter of law.

### iv. Unfair Competition

Plaintiff's final causes of action allege that Defendant engaged in unfair competition, in violation of 15 U.S.C. § 1125(a) and Texas common law. *Id*. at 12–13. The Court finds that these claims appear to consist of virtually identical allegations to the claims addressed *supra*, § III.A.ii. *Compare id., with id*. at 10. The statute cited in the federal count, Count V, is even the same as that for Count II — 15 U.S.C. § 1125(a). *Id*. at 2. As discussed above, the Court finds that Defendant engaged in the complained-of conduct and thereby violated this statute.

### B. An Appropriate Award

Having found that Plaintiff successfully showed that the Defendant infringed its trademark and engaged in unfair competition under 15 U.S.C. § 1125(a), the Court now turns to the appropriate award of damages in this case. In its Motion for Entry of Default Judgment, Plaintiff stated that it could not "prove Defendant's profits." Dkt. No. 12, at 2. Plaintiff "requests only an award of its attorney's fees, as well as injunctive relief." *Id*. Based on this request, Plaintiff has waived its right to Defendant's profits and "any damages sustained by the plaintiff." 15 U.S.C. § 1117(a)(1), (2) (2005); Donsco, Inc. v. Casper Corp., 587 F.2d 602, 607–08 (3d Cir. 1978); Accu Personnel, Inc. v. Accustaff, Inc., 846 F.Supp. 1191, 1215 (D. Del. 1994). The Court will therefore consider each of the requested bases of relief in turn.

### i. Attorney's Fees

Plaintiff first alleges that it "is entitled to its costs and attorneys' fees incurred in this action pursuant to 15 U.S.C. § 1117(a)(3) because it has pled, would prove, and Defendant has not denied, facts showing this is an exceptional case." Dkt. No. 12, at 3. Plaintiff bases its request for attorneys' fees on its allegations that Defendant's certification was revoked, he was informed of this fact, he represented himself as certified four months after the revocation, he was sent a cease and desist letter, he was given notice of the revocation by telephone, and he used his credential card again anyway. *Id*. Plaintiff characterizes this conduct as "deliberate and intentional

infringement," and argues that it makes this case "exceptional." *Id.* The Court finds that this case is not exceptional, and therefore denies Plaintiff's request for attorney's fees.

For the Plaintiff to be awarded attorney's fees in an action for trademark infringement or unfair competition, the Court must find that the case is "exceptional." 15 U.S.C. § 1117(a) (2005). An "exceptional" case is one in which the Defendant acted in a manner that was willful, deliberate, malicious, or fraudulent. *See Grady*, 119 F.3d at 1244; Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc., 951 F.2d 684, 697 (5th Cir. 1992); *Tour 18*, 942 F.Supp. at 1571; *Accustaff*, 846 F.Supp. at 1216; Buca di Bacco, Inc. v. Buca di Bacc', Inc., 828 F.Supp. 31, 32 (S.D. Tex. 1993). The Defendant must also have acted with a high degree of culpability, such as bad faith or fraud. *See Tex. Pig Stands*, 951 F.2d at 697; *Accustaff*, 846 F.Supp. at 1216; *Buca di Bacco*, 828 F.Supp. at 32. Thus, even if the Defendant acted deliberately, the case may still not be exceptional if the Defendant acted with what it in good faith believed was a legitimate right to use the mark or in a manner it legitimately believed would not cause confusion. *See Grady*, 119 F.3d at 1244; *Tour 18*, 942 F.Supp. at 1572; *Buca di Bacco*, 828 F.Supp. at 32. Finally, a Court retains discretion over the decision of whether to award attorney's fees, as it *may*, but is not *required* to, award attorneys' fees in exceptional cases. 15 U.S.C. § 1117(a) (2005); *Grady*, 119 F.3d at 1244; *Tour 18*, 942 F.Supp. at 1572.

In this case, Plaintiff contends that "Defendant's deliberate and intentional infringement qualifies this as an exceptional case." Dkt. No. 12, at 3. The Court finds, however, that the Defendant did not act deliberately or intentionally, but instead acted in a manner which he in good faith believed constituted legitimate conduct. Dkt. No. 1, at 6–9. Plaintiff's own facts show that Defendant was not aware that his certification had been revoked at the time of the first complained-of incident.[4] *Id.* at 7. Thus, the Court

---

[4] Plaintiff states that Defendant claims not to have received its letter of February 12, 2003. Dkt. No. 12, at 7. Although this does not establish Defendant's lack of awareness as a fact, the Defendant's claim is verified by the timing and method of Defendant's two uses of his card after February 12, 2003. Prior to the telephone

finds that (1) Plaintiff has not established that Defendant acted in a willful, deliberate, malicious, or fraudulent manner, (2) the Defendant acted without bad faith, and (3) this case is therefore not "exceptional." Plaintiff's request for attorney's fees is denied.[5]

### ii. Costs

In addition to attorneys' fees, the Plaintiff requests an award of costs under 15 U.S.C. § 1117(a)(3). Dkt. No. 12, at 3. The Court finds that Plaintiff is entitled to its costs in this case. 15 U.S.C. § 1117(a)(3) (2005).

Plaintiff alleges that its costs in this case total $408.31 — $250.00 for the filing fee and $158.31 for service of process. Dkt. No. 12, at 3. The Court therefore finds that Plaintiff is entitled to $408.31 in costs.

### iii. Injunction

Finally, Plaintiff moves for an injunction against Defendant, to prohibit the Defendant from using ARRT's trademark and order the Defendant to submit "all materials in his possession that use the ARRT® trademark" to the Court. *Id.* at 4. The Court agrees that an injunction is warranted in this case. However, the Court finds that the requested injunction is overly broad in scope.

An injunction pursuant to 15 U.S.C. § 1116(a) is appropriate. The Defendant should not be permitted to exploit the goodwill and reputation of the Plaintiff to further his own career. *See Tour 18*, 942 F.Supp. at 1547. Therefore, the Defendant shall not represent himself as associated with, certified by, or registered with the Plaintiff.

---

conversation of June 17, 2003 or letter of the same date, on June 10, 2003, Defendant used his card normally. *Id.* at 8. However, on August 16, 2004, when Defendant clearly had knowledge of the revocation of his certification, he blacked out information on the card and stated that he was not currently registered with ARRT. *Id.* at 8. Thus, Defendant specifically represented that he was *not* currently affiliated with ARRT after the telephone conversation and his receipt of the June 17, 2003 letter. *Id.*

[5]The Court notes that, even had this case been "exceptional," it would still decline to award attorney's fees to the Plaintiff. *See* Dorr-Oliver Inc. v. Fluid Quip, Inc., 966 F.Supp. 718, 721 (N.D. Ill. 1997).

Defendant shall not use documentation displaying the ARRT® trademark in any manner that could be interpreted as affiliating Defendant with ARRT or implying that ARRT sponsors or approves of Defendant's work. However, Defendant is permitted to use the ARRT® trademark to compare the quality of his services to those of an ARRT certified radiologic technologist or to show that he was *formerly* certified by ARRT.[6] *Id.* at 1552-53, 1573. If Defendant chooses to refer to ARRT or to use its trademark in this respect, Defendant shall make it clear that he is no longer certified or registered, and he shall truthfully disclose why he is no longer certified or registered. This information shall be presented in the same manner as Defendant provides the information related to ARRT.[7]

Plaintiff also asks this Court to require "Defendant to turn over to ARRT or this Court all materials in his possession that use the ARRT® trademark." Dkt. No. 12, at 4. The Court finds that this request should be granted in part and denied in part. Insofar as this request applies to materials like Defendant's certification card, which imply that Defendant is affiliated with, sponsored by, certified by, or registered with the Plaintiff, the request is granted. However, if Defendant has materials distributed by Plaintiff that are, for example, intended for educational, informative, or similar purposes, but which happen to display Plaintiff's trademark, the request is denied. Therefore, the Court ORDERS that Defendant turn over all materials containing Plaintiff's trademark to the Court, so that it may properly decide whether the materials are the rightful property of the Plaintiff or of the Defendant.

---

[6]Regardless of whether his certification has been revoked, Defendant was certified by ARRT and received a passing score on the ARRT exams. Dkt. No. 1, at 4. Thus, this Court will not prohibit Defendant from any and all uses of the ARRT® trademark.

[7]For example, if Defendant submits a resume stating that he was at one time certified by ARRT, that resume must also state that he is no longer so certified and why he is no longer certified.

IV.  **Conclusion**

Based on the foregoing, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff American Registry of Radiologic Technologists' Motion for Entry of Default Judgment. Dkt. No. 12.

The Court **GRANTS** default judgment as to Plaintiff's claims for unfair competition and trademark infringement pursuant to 15 U.S.C. § 1125.

The Court **DENIES** default judgment as to Plaintiff's claims for dilution and trademark infringement under 15 U.S.C. § 1114. The Court **DISMISSES** these claims.

Furthermore, the Court **ORDERS** the Defendant to pay Plaintiff's costs of $408.31 and **ENJOINS** Defendant from certain uses of the ARRT® trademark and certain references to his relationship with ARRT, as described *supra*, § III.B.iii.

The Court **DENIES** the Plaintiff's motion insofar as it requests an award of attorney's fees under 15 U.S.C. § 1117.

Finally, the Court **ORDERS** the Defendant to submit to the Court all items in his possession which display the Plaintiff's mark, so that the Court may properly distribute them to their rightful owners.

DONE at Brownsville, Texas, this 12th day of May, 2006.

Hilda G. Tagle
United States District Judge